468 P.2d 301

**George BIERSDORFF, Plaintiff-Respondent,**

**v.**

**Ray H. BRUMFIELD and Virginia Brumfield, husband and wife; United States of America, State of Idaho, Pierce Trailer and Equipment Company, Economy Hardware & Electric Co., Broadway Splicing and Supply, Inc., and Page & Page Co., Defendants,**

**Page & Page Co., Defendant-Appellant.**

**No. 10280.**

Supreme Court of Idaho.

March 3, 1970.

Rehearing Denied April 27, 1970.

McFadden & Park, St. Maries, for appellant.

Scott W. Reed, Coeur d'Alene, for respondent.

McQUADE, Justice.

This is an action to foreclose a mortgage on real property. The issues presented by this appeal pertain to the competing rights of a mortgagee and an attaching creditor of real property.

In the spring of 1965, Ray Brumfield, a gypo logger, sought to have his equipment overhauled in preparation for the summer season. This work was to be performed by respondent, George Biersdorff, doing business as Valley View Truck & Welding at

St. Maries, Idaho. Brumfield than owed Biersdorff either $7,000 or $11,000 (depending on whether a partnership debt of Brumfield, the "A & B account," was properly included) and expected to incur substantial further indebtedness as a result of the proposed work. Biersdorff, however, said that he could not commence overhauling the equipment until Brumfield provided security therefor. Brumfield offered a mortgage on real property which is the subject of this action as security for debts owed and anticipated. No mortgage was delivered at that time; the parties apparently understood that the mortgage was only a stop-gap to be delivered if Brumfield was unable to pay off his indebtedness from the proceeds of the summer's logging. The note which the mortgage was to secure was to be in the amount of $16,000, this being a sum which Brumfield was likely to owe for repairs to equipment.

During the summer of 1965, Brumfield's debt to Biersdorff did increase, reaching approximately $14,500, and, in November of 1965, Biersdorff became uneasy enough about the account to have a mortgage document prepared at the law offices of the attorney for the appellant Page & Page Co. Biersdorff presented it to Brumfield, but was told that Brumfield and his wife would execute and deliver another. The Brumfields did not sign and deliver the mortgage until February 26, 1966. In the meantime, from November 1, 1965, to February 28, 1966, Brumfield's indebtedness dropped from over $14,500 to below $11,000.

Brumfield was involved in litigation over other debts with appellant Page & Page Co. That action was commenced on October 14, 1965. Page & Page Co. waited until February 28, 1966, to file a writ of attachment. On this last date there was a sudden and unexplained flurry to record liens on, Brumfield's interests. Biersdorff's wife recorded his mortgage five minutes before ten o'clock a. m. Page & Page Co. recorded its attachment thirty-five minutes later.

Biersdorff did additional work and repairs for Brumfield, and Brumfield's account with respondent grew from $10,737.-62 on February 28, 1966, to $17,641.74 on June 30, 1966, to $24,800.00 on July 31, 1966, to over $26,000.00 on August 31, 1966. In September, 1966, Brumfield filed bankruptcy after Page & Page Co. recovered judgment against him.

The mortgage document which is the center of this controversy is a standard printed form. It makes no reference to securing any subsequent indebtedness. It recites that it secures a $16,000 plus interest note. It bears two dates. At the head of the mortgage and on the attached promissory note the date, May 8, 1965, is inscribed. On the acknowledgement, however, the May 8, 1965, date is crossed out and February 26, 1966, is placed in its stead. The mortgage recites that the note bears "even date" with the mortgage. The note requires interest "from date," principal and interest being due "two (2) years after date without grace" and "due May 8, 1967."

Of the several defendants named in the complaint, Page & Page Co. alone appeared to defend its lien interest. It defended the action before the district court sitting without a jury on two theories principally. One was fraud, the other was that appellant had recorded its mortgage prior in time. It lost on both of these issues below, and it does not raise them on this appeal. The district court rendered judgment of foreclosure in the sum of $16,000 principal, $2,-040 interest and $1,410 attorney's fees in favor of respondent. From that judgment Page & Page Co. prosecutes this appeal.

At the outset we are confronted with the question of whether this action should be dismissed because of a procedural irregularity. The trial court's first finding of fact recites that Brumfield delivered to Biersdorff a "promissory note calling for the payment of $16,000 on February 28, 1968, with interest at 6% per annum from February 28, 1966." Appellant argues that there had been no default on payment of the note at the time the complaint was filed

on June 7, 1967, or when the foreclosure came to trial on December 14, 1967, because nothing was due until February, 1968. It is argued that the foreclosure was, therefore, premature and that the action ought now be dismissed.

On this point we believe that the decision of this Court in Schlueter v. Nelson [1] suggests the wiser course. That case involved a debt, payment of which was conditional upon the happening of a certain event. The action was brought and litigated before a reasonable time for the happening of that event had elapsed. The action was, therefore "on strictly technical grounds" prematurely brought and should have been dismissed. The Court pointed out, however, that

> "While it has been held that an action prematurely brought cannot successfully be maintained, the rule is not a universal one, and the circumstances affecting the rights of the parties must be taken into consideration. Buhrmeister v. Buhrmeister, 10 Cal.App. 392, 102 P. 221; 5 C.J.S. Appeal and Error, § 1897, page 1391; 4 C.J. 1169, Sec. 3193." [2]

The Court therein also held that, under the harmless error rule, now Idaho R.Civ.P. Rule 61, "we are constantly reminded to disregard matters which do not go to the substantial rights of the parties." *Schlueter* concluded that:

> "We are of the opinion that this matter could and should have been disposed of without protracted, expensive litigation, and we see no reason to further prolong the controversy.

> "Reversing the judgment, granting a new trial, or ordering the action dismissed could, in the matter before us, serve no useful purpose. It would simply prolong expensive, unproductive, and unnecessary litigation." [3]

■ That reasoning is acutely applicable to this action. All of the issues have been tried in the district court and argued on appeal before us. The judgment of the lower court was rendered in April, 1968, after the last possible due date for the note. Obviously the action would not be premature if brought today. To reverse the judgment or dismiss the action now would truely result in prolonged, expensive and now unnecessary litigation.

Appellant next contends that if the action was not premature, then the amount of the debt secured by the $16,000 mortgage was only as much as was owed by Brumfield to Biersdorff on February 28, 1966, the time appellant recorded the notice of attachment giving constructive notice thereof. In Boise Payette Lumber Co. v. Winward [4] it is said that a mortgagee must be legally bound to make advances if he is to maintain seniority as to those advances as against a junior mechanic's lien of which he has notice. Goss v. Iverson, [5] after stating the same rule, found no contract to protect later advances. The determinative fact in both cases was the understanding between the senior lender and the debtor at the time they entered into their original transaction. This Court followed the rule that if the parties intended that there should be future advances secured by the mortgage, that agreement protected the seniority of the lien for the subsequent advances. The trial court found

"IV

"The mortgage and note given by defendants, RAY H. BRUMFIELD and VIRGINIA BRUMFIELD, was for a fixed amount and was given as security for moneys owed to the plaintiff and for payment of services to be advanced by plaintiff to said defendants. The mortgage is valid and existing."

1. 74 Idaho 396, 399–400, 263 P.2d 386, 388 (1953).

2. *Id.*, at 399, 263 P.2d 388.

3. *Id.*, at 400, 263 P.2d 388.

4. 47 Idaho 485, 489–490, 276 P. 971, 972 (1929).

5. 72 Idaho 240, 238 P.2d 1151 (1951).

Where, as here, the findings of fact of the district court are supported by substantial testamentary and documentary evidence they will not be disturbed on appeal.[6]

It should be pointed out that Page & Page Co. is not in the position of a junior lienholder who is prejudiced because he lent money relying on a limited or stated lien which gave no warning that it would be expanded in the future. Respondent is only claiming the face amount of his mortgage, of which appellant had constructive notice as of the time it was recorded. Under Boise Payette Lumber Co. v. Winward, a recorded, stated sum mortgage is sufficient notice of that indebtedness, even though not totally incurred, up to the amount on the face of the mortgage.[7]

Appellant finally contends that the trial court computed interest on a full $16,000 from February 28, 1966, and that the interest should only have been calculated on the actual amounts owed until Brumfield's account accrued to $16,000 in June. Respondent admitted at trial the correctness of this contention. Respondent's counsel has computed the amount of interest actually due and reports that it is approximately $60. The interest must be calculated to produce the actual amount due, and we, therefore, remand this action to the district court for a determination of the interest actually due and to amend the judgment accordingly. We remand for a determination on this issue only.

We have examined appellant's other assignments of error, but because of the manner in which we have disposed of this action, we conclude there are no grounds for reversal in them. We affirm the judgment in all respects except as to the question of interest.

Costs to respondent.

McFADDEN, C. J., and DONALDSON, SHEPARD and SPEAR, JJ., concur.

On Denial of Petition for Rehearing.

McQUADE, Justice.

Appellant, in its petition for rehearing suggests that we have departed from the rule articulated in Boise Payette Lumber Co. v. Winward, 47 Idaho 485, 276 P. 971 (1929), and Goss v. Iverson, 72 Idaho 240, 238 P.2d 1151 (1951). This suggestion is mistaken; the rule has not been changed. A senior mortgage for future advances will maintain seniority for advances made after actual notice of a junior lien if, but only if, there was a contractual obligation to make such advances existing prior to the notice of the junior lien. See G. Osborne, Mortgages § 120, at 295–296 (1951). This is true even though the agreement to make the advances is oral. See Whelan v. Exchange Trust Co., 214 Mass. 121, 100 N.E. 1095 (1913); Lumber & Builders Supply Co. v. Ritz, 134 Cal. App. 607, 25 P.2d 1002 (1933).

This case involved a mortgage which stated a total sum larger than the amount owed when the mortgage was delivered and, by extrinsic oral agreement, was meant to secure subsequent advances up to the amount stated on the recorded mortgage. Absent fraud, this is a perfectly acceptable transaction, and it will secure amounts loaned aggregating up to, but only up to, the total sum stated on the face of the mortgage. See Savings & Loan Soc. v. Burnett, 106 Cal. 514, 39 P. 922 (1895); Wardman v. Iseman, 99 Pa.Super. 551 (1930).

The district court addressed itself to the question of whether advances made by respondent after appellant had perfected its attachment had retained their priority. In its fourth finding of fact, quoted in the

6. *Compare* Thomas v. Ballou-Latimer Drug Co., 92 Idaho 337, 442 P.2d 747 (1968); Stout v. Boise-Cascade Corp., 87 Idaho 38, 42, 390 P.2d 63, 65 (1964); Knoblock v. Arenguena, 85 Idaho 503, 509, 380 P.2d 898, 902 (1963); *with* Hale v. McCammon Ditch Co., 72 Idaho 478, 488, 244 P.2d 151, 156–157 (1951).

7. *Supra* note 2; *accord,* Weiser Loan & Trust Co. v. Comerford, 41 Idaho 172, 177–178, 238 P. 515, 516 (1925).

**574**

opinion, the lower court found that Biers-dorff was obligated to continue servicing Brumfield's equipment. The advances of service made after any actual notice of appellant's lien was received by respondent were, therefore, secured up to an accrued value of $16,000.

Rehearing denied.