**GUARDIAN FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,**

v.

**Herbert P. SUSKIND, Appellee.**

**No. 4891.**

District of Columbia Court of Appeals.

Argued Jan. 6, 1970.

Decided May 5, 1970.

---

4. Lee v. Habib, 424 F.2d 891 (D.C.Cir., 1970).

Joseph V. Gartlan, Jr., Washington, D. C., with whom Michael A. Greenspan, Washington, D. C., was on the brief, for appellant.

Allen A. Sperling, Washington, D. C., for appellee.

Before KELLY, FICKLING and KERN, Associate Judges.

KELLY, Associate Judge:

This appeal concerns the priority of a purchase-money deed of trust containing a provision that it "shall be and is subordinate to any construction loan or loans and any and all advances made under said construction loan or loans or to a permanent loan or loans made by a reputable building association or bank." The deed of trust, recorded on March 17, 1964, was executed by A & D Investments, Inc. (hereinafter A & D) to secure $7,500 worth of promissory notes given by A & D as part of the purchase price of a certain parcel of unimproved realty conveyed to A & D by appellee Suskind.

Thereafter appellant Guardian Federal Savings & Loan Association (hereinafter Guardian) committed itself to advance $102,000 to A & D for the construction of improvements on the property. This construction loan was secured by a first deed of trust on the property recorded on July 7, 1964. Thereafter construction commenced and Guardian advanced a total of $51,000, when, in the fall of 1964, two mechanics' liens, totaling $3,653, were filed against the property. Guardian made further advances totaling $30,600, until, in April of 1965, A & D being in default under the terms of the first deed of trust securing the construction loan and the purchase-money notes held by Suskind, Guardian ordered the property foreclosed. At the foreclosure sale the property was purchased by Guardian for $95,000. Suskind, the purchase-money mortgagee, brought this action to recover the $4,915.44 surplus remaining after the satisfaction of Guardian's debt and the payment of foreclosure expenses. Guardian contends that the trial court erred in not allowing it to retain $3,153 that it expended in July of 1966 to settle and release the mechanics' liens. We do not agree and affirm the trial court's award of the entire surplus proceeds to the purchase-money mortgagee, Suskind.[1]

---

1. The stipulated facts do not indicate whether the construction loan agreement compelled the lender to advance all of the $102,000. *Cf.* McConnell v. Mortgage Inv. Co. of El Paso, 157 Tex. 572, 305 S.W.2d 280, 286 (1957). Neither

In the absence of the subordination agreement, D.C. Code 1967, § 38–109 [2] would establish the following priorities to the foreclosure sale proceeds: first, the purchase-money deed of trust; second, the construction loan deed of trust to the extent of disbursements prior to the filing date of the mechanics' liens; third, the mechanics' liens; and finally, the balance of the construction loan.

Guardian argues that, to the extent of the undistributed balance of the construction loan, the mechanics' lienors would be subrogated to the construction lender's priority created by the subordination provision. Because the mechanics' liens would then be senior to the purchase-money deed of trust, Guardian reasons that it was justified in paying the mechanics' lienors and in treating those payments as disbursements on the construction loan. As equitable considerations supporting its position, Guardian contends that the payments to the lienors would improve the value of the purchase-money mortgagee's security and that the purchase-money mortgagee contemplated that the full amount of the construction loan would be a prior lien.

■ However, appellant's theory of equitable subrogation would elevate a mechanic's lienor, or a party in its place, to a priority not contemplated by the statute. The intent of § 38–109 is clear: even the relation-back preference of the mechanic's lien shall not affect the priority of a recorded purchase-money deed of trust—a priority which exceeds even that of a previous judgment. [3] "The controlling principles underlying the whole doctrine of marshaling funds are equality and equity; and it is not apparent why a vendor, by subordinating his lien for purchase money to another mortgage, necessarily subordinates it also to all liens having priority over the other mortgage, thus placing them in a better position than they would otherwise have occupied." Malmgren v. Phinney, 50 Minn. 457, 52 N.W. 915, 917 (1892). As between the purchase-money mortgagee and the construction lender standing in the place of the mechanic's lienor, the equitable considerations weigh in favor of the purchase-money mortgagee who was powerless to prevent the mechanics' liens from attaching to his security. The mechanics' lienors had constructive notice of two prior deeds of trust which were recorded before construction ever began. Creigh Sons & Co. v. Jones, 103 Neb. 706, 173 N.W. 687 (1919). There is no indication that the purchase-money mortgagee promoted the property improvements. Cf. Hight v. Rich-

the construction loan agreement nor the deed of trust securing it were included in the record.

2. § 38–109 provides: The [mechanic's lien] shall be preferred to all judgments, mortgages, deeds of trusts, liens, and incumbrances which attach upon the building or ground affected by said lien subsequently to the commencement of the work upon the building, as well as to conveyances executed, but not recorded, before that time, to which recording is necessary, as to third persons; except that nothing herein shall affect the priority of a mortgage or deed of trust given to secure the purchase money for the land, if the same be recorded within ten days from the date of the acknowledgment thereof. When a mortgage or deed of trust of real estate securing advances thereafter to be made for the purpose of erecting buildings and improvements thereon is given, or when an owner of lands contracts with a build-er for the sale of lots and the erection of buildings thereon, and agrees to advance moneys toward the erection of such buildings, the [mechanic's lien] shall have priority to all advances made after the filing of said notices of lien, and the lien shall attach to the right, title, and interest of the owner in said building and land to the extent of all advances which shall have become due after the filing of such notice of such lien, and shall also attach to and be a lien on the right, title, and interest of the person so agreeing to purchase said land at the time of the filing of said notices of lien. * * *

3. D.C.Code, 1967 § 15–104 provides: The lien of a mortgage or deed of trust upon real property, given by the purchaser to secure the payment of the whole or any part of the purchase-money, is superior to that of a previous judgment or decree against the purchaser.

**298**

mond Park Improvement Co., 47 App.D.C. 518 (1918). The statutory favor enjoyed by purchase-money liens and the capability of the construction lender to influence the timing and the amount of the mechanics' liens separate this case from those which can be resolved by the mechanical application of a circularity of liens formula.[4]

Guardian argues that under Anglo-American Savings & Loan Association v. Campbell, 13 App.D.C. 581, 43 L.R.A. 622 (1898), once mechanics' liens have attached, construction loan disbursements cannot be withheld. But, in *Anglo-American,* the court's placing of a constructive trust in favor of the mechanics' lienors on the undistributed portion of a construction loan was expressly based on a finding that the required construction had been completed in compliance with the terms of the construction loan agreement,[5] a factor not present here.

There being no showing of error justifying reversal, the judgment of the trial court is

Affirmed.

4. *Cf.* Grise v. White, —— Mass. ——, 247 N. E.2d 385 (1969); Kingsberry Mortgage Co. v. Maddox, 13 Ohio Misc. 98, 233 N.E.2d 887 (1968).

5. 13 App.D.C. at 600. *See also* France v. Coleman, 29 App.D.C. 286 (1907).